UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:13-CR-00054-JRG |
| | ) | |
| RICKIE LEE HOYLE, JR. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Rickie Lee Hoyle, Jr.'s Pro Se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 60], the United States' Response [Doc. 63], and Mr. Hoyle's Reply [Doc. 67]. For the reasons herein, the Court will deny Mr. Hoyle's motion.

### I. BACKGROUND

In 2014, Mr. Hoyle pleaded guilty to using a facility or means of interstate commerce to knowingly persuade or attempt to persuade, induce, entice, or coerce a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). [Plea Agreement, Doc. 29; Minute Entry, Doc. 30]. At sentencing, Mr. Hoyle's criminal history category was II and his total offense level was 29, which included a three-level reduction under USSG §§ 3E1.1(a) and (b) for acceptance of responsibility. [PSR, Doc. 32, at 8, 9]. But during sentencing, the Court seriously considered taking away this three-level reduction after listening to Mr. Hoyle's allocution, which disturbed the Court because Mr. Hoyle attempted to disown his conduct and shift blame to the minor victim. [Hr'g Tr., Doc. 44, at 38:21–22, 39:3–11, 45:5]. Instead of stripping Mr. Hoyle of the three-level reduction, the Court ultimately decided to impose a lengthy term of supervised release. [*Id.* at 53:2–3, 56:24–25]. The Court sentenced him to a guidelines-range sentence of 121 months' incarceration and 20 years' supervised release. [*Id.* at 56:15–18, 56:24–25].

Acting pro se, Mr. Hoyle now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, citing various underlying medical conditions including kidney disease, high blood pressure, and a history of sarcoidosis of the lungs. [Def.'s Mot. at 6; Med. Records, Doc. 60-1, at 6]. In response, the United States opposes Mr. Hoyle's motion, arguing that his release would pose a danger to the community and be inconsistent with 18 U.S.C. §3553(a)'s factors. [United States' Resp. at 9–12]. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Hoyle's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

2

§ 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider [Mr. Hoyle's] motion because 30 days have passed since the warden of Hoyle's facility received his request for compassionate release. [United States' Resp. at 1].

Under § 3582(c)(1)(A), the Court's task is to determine whether (1) "extraordinary and compelling reasons" warrant a reduction and whether (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)(i). "[C]ourts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). The Application Notes to § 1B1.13 state that, when a defendant suffers from a medical condition, extraordinary and compelling reasons exist in two scenarios: the medical condition (1) is a terminal illness or (2) "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(i)–(ii).

In considering whether Mr. Hoyle's underlying conditions, against the backdrop of the COVID-19 pandemic, "substantially diminish[] [his] ability" to "provide self-care within" the prison's walls and leave him without an expectation of recovery, USSG § 1B1.13 n.1(A)(ii), the Court turns to the Center of Disease Control's guidelines, *see, e.g.*, *Cameron v. Bouchard*, ___ F. Supp. 3d ___, 2020 WL 2569868, at *4–5 (E.D. Mich. May 21, 2020), *vacated on other grounds*, ___ F. App'x ___, 2020 WL 3867393 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau*

3

*Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from COVID-19":

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020). "Because one of Hoyle's medical conditions is recognized by the CDC as increasing the risk of severe illness from COVID-19, the United States agrees that Hoyle has identified an extraordinary and compelling reason for release." [United States' Resp. at 9].

But the fact that Mr. Hoyle is an at-risk individual under the CDC's guidelines does not, in and of itself, entitle him to compassionate release. Before ordering compassionate release, the Court also has to determine that (1) he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," (2) a reduced sentence is consistent with §3553(a)'s factors, to the extent they are applicable, and (3) a reduced sentence is otherwise consistent with USSG § 1B1.13's policy statements. USSG § 1B1.13(2)–(3); *see* § 3582(c)(1)(A) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed

4

except that . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Resnick*, 451 F. Supp. 3d 262, 265 (S.D.N.Y. 2020) ("The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(l)(A) and Section 1B1.13 of the United States Sentencing Guidelines.").

### A. Danger to the Safety of Others or the Community

Section 3142(g) contains the factors that courts must consider in determining whether a defendant should be detained pending trial, and it states:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Having considered § 3142(g)'s factors and refamiliarized itself with Mr. Hoyle's presentence investigation report [Doc. 32], the Court is of the conviction that Mr. Hoyle would be a danger to the community if it were to order his release under § 3582(c)(1)(A). As for the nature and circumstances of Mr. Hoyle's offense, Mr. Hoyle argues that he is not a danger to the minor victim in this case or the community because he "did not use a weapon, was not on parole or probation etc., did not harm anyone physically, nor were threats made." [Def.'s Mot. at 12]. Mr. Hoyle's argument—as was true of his allocution—is not only breathtakingly out of touch with the evidence but is also a disturbing attempt to downplay his offense.

First of all, Mr. Hoyle ignores the fact that § 3142(g)(1) specifically requires the Court to consider whether the offense at issue "involves a minor victim," which it does in this case. Second, although Mr. Hoyle claims that he "did not harm anyone physically," [Def.'s Mot. at 12], the record shows that he sexually assaulted the minor victim on more than one occasion, [PSR at 4, 5].[1] Third, the weight of the evidence against Mr. Hoyle is considerable, consisting of thousands of text messages with sexually explicit language and images, [*id.* at 6], as well as Mr. Hoyle's own admission, under oath, that on May 24, 2013—the date on which authorities apprehended him—he drove from his residence to a public location with the intent to engage the minor victim in sexual activity, *see* [Plea Agreement at 2; Minute Entry]. Yet, perhaps most troubling is the evidence showing that Mr. Hoyle's efforts to entice the minor victim spanned the course of a year, over which time he even became involved as a volunteer in a Christian youth program at the minor victim's high school. [PSR at 3, 5, 6]. Simply put, these facts—each

---

[1] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

one of which chronicles a calculated, persistent, and classic pattern of predatory behavior—are not facts under which Mr. Hoyle can realistically argue that his release would not pose a danger to the minor victim or the community.

Lastly, § 3142(g)(3)(A) states that an analysis of a defendant's history and characteristics should also include, when relevant, the "record concerning appearance at court proceedings," and the Court considers this factor to be highly relevant here. During Mr. Hoyle's sentencing hearing, Mr. Hoyle's allocution disturbed the Court and compelled it to sentence Mr. Hoyle to an increased term of supervised release because of his attempts to "den[y]" and "minimize[e]" his conduct and because of his "lack of candor" and "potentially outright false statements, either made to [the Court] at the time of the change of plea hearing or made here today." [Hr'g Tr. at 39:8–11]. When allocuting to the Court, Mr. Hoyle, for example, stated that, on May 24, 2013, he "never [traveled to meet the minor victim] with the thoughts of sex on [his] mind and that never even crossed [his] mind." [*Id.* at 17:24–25]. Rather, he said, he went to meet the minor victim because he "thought he was in trouble and needed help." [*Id.* at 17:25, 18:1–2].

These statements, in the Court's view, "raise[d] some obvious questions" about the authenticity of Mr. Hoyle's allocution. [*Id.* at 21:10–11].

> The Court: If I understand you correctly, it is your assertion that you went to Erwin on May 24 for the purpose of helping this victim with some sort of personal need in his life, not to engage him in sexual conduct.
>
> Mr. Hoyle: That's exactly true, Your Honor.
>
> The Court: I'm looking at the stipulation of facts that's contained in your plea agreement. Here's what it says, on May 24, 2013, the defendant, that's you, drove from his home in Johnson City, Washington County, Tennessee, to a public location in Erwin, Unicoi County, Tennessee, for the purpose of meeting and engaging an individual under the age of 18 in illegal sexual activity. Which one is true?

7

[*Id.* at 21:11–24]. In sentencing Mr. Hoyle, the Court concluded that his lack of candor and his denial of his criminal conduct meant that he could very likely commit further criminal acts in the future. [*Id.* at 48:12–23]. So the record of Mr. Hoyle's sentencing hearing is a factor that heavily weighs against his release, as do all the relevant factors under § 3142(g).

### B. Section 3553(a)'s Factors

Because the Court is not satisfied that Mr. Hoyle would not pose a danger to the minor victim or to the community if it were to order his release, it has no need to engage in a lengthy discussion of § 3553(a)'s factors.[2] Also, because the Court "considered the relevant factors in some depth at the original sentencing," it is under no obligation to readdress all of those factors now. *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *see United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (recognizing that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *id.* at 330–31)); *see also* [Hr'g Tr. at 39:12–25, 40:1–25, 41:1–25, 42:1–25, 43:1–25, 44:1–25, 45:1–25, 46:1–25, 47:1–25, 48:1–25, 49:1–25, 50:1–25, 51:1–25, 52:1–25, 53:1–25, 54:1–25, 55:1–25, 56:1–18 (addressing all of § 3553(a)'s factors in detail)]. In light of Mr. Hoyle's continued efforts to downplay the severity of his offense, the Court does, however, see the need to reemphasize the extreme seriousness of that offense under § 3353(a)(2)(A), which does not warrant his early release. *See United States v. Dobrowolski*, 406 F. App'x 11, 13 (6th Cir. 2010) (stating that "the

---

[2] These factors include the "nature and circumstances of the offense"; the "history and characteristics of the defendant"; the "need for the sentence imposed" to "reflect the seriousness of the offense," to "promote respect for the law," and "to provide just punishment for the offense"; the "sentencing range established" for the defendant's offense; and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1)–(2), (4), (6).

8

attempted sexual enticement of a minor is a very serious crime" and that "Congress intended to impose lengthy mandatory-minimum sentences in [such] cases").

## C. FMC Lexington

Lastly, in moving for compassionate release under § 3582(c)(1)(A), Mr. Hoyle correctly observes that "[m]ost courts require a showing that the virus is actually present at the relevant facility and that the concern is not some generalized or speculative fear of COVID-19." [Def.'s Mot. at 7]. A prisoner's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at \*2 (N.D. Ohio Nov. 18, 2019) (observing that "[c]ompassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at \*3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)); *United States v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at \*2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

COVID-19 has not affected FMC Lexington to the same degree as other federal facilities throughout the country. The Federal Bureau of Prisons ("BOP") reports only four active cases among the inmates and one active case among the staff at FMC Lexington. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Oct. 16, 2020). And,

9

importantly, Mr. Hoyle does not claim that he has been exposed to COVID-19 or that the BOP has failed to take swift, appropriate, and effective measures to quarantine the infected inmates and staff member. Under these circumstances, Mr. Hoyle is not entitled to compassionate release. *Cf. United States v. You*, No. 20- 5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) (noting the scarcity of "COVID-19 cases at [the defendant's] present facility" and observing that "her facility has implemented precautionary measures to protect those detained in the facility"); *see Raia*, 954 F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Elebesunu,* No. GJH-13-008, 2020 WL 3791978, at *2 (D. Md. July 7, 2020) ("Under circumstances such as these where the number of cases at the facility is low and BOP appears to have controlled the spread, the imminence of the risk to [the defendant] is diminished and weighs against granting compassionate release." (citation omitted)); *United States v. Arafat*, No. 12-cr-45, 2020 WL 3790727, at *6 (D. Minn. July 7, 2020) ("[E]ven assuming [the defendant's] underlying medical conditions exist, [he] has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID- 19." (citation omitted)).

### III.  CONCLUSION

In sum, the Court sympathizes with Mr. Hoyle's concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because USSG § 1B1.13 and § 3553(a)'s factors militate against his release. His Pro Se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 60] is therefore **DENIED**.

10

Case 2:13-cr-00054-JRG-MCLC   Document 69   Filed 10/19/20   Page 10 of 11   PageID #: 353

So ordered.

ENTER:

                                            s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE